IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BRIAN WHITLEY, Individually and
on Behalf of All Others Similarly Situated  PLAINTIFF

v.  No. 4:16-cv-624-DPM

BAPTIST HEALTH; BAPTIST HEALTH
HOSPITALS; DIAMOND RISK
INSURANCE LLC; CONTINENTAL
CASUALTY COMPANY; ADMIRAL
INSURANCE COMPANY; ADMIRAL
INDEMNITY COMPANY; IRONSHORE
INDEMNITY, INC.; and IRONSHORE
SPECIALTY INSURANCE COMPANY  DEFENDANTS

ORDER

1. **Background.** Whitley was injured in a car accident caused by another driver going the wrong way down the interstate. He received treatment at Baptist Health Medical Center in Little Rock. According to Whitley, the hospital was supposed to send his medical bills to QualChoice, Whitley's insurer, within 180 days of his treatment. It didn't. Instead, the hospital filed a lien in Pulaski County on any personal-injury damages Whitley might recover due to the accident. In May 2014, Whitley received a $50,000 settlement offer from the other driver's insurer. Whitley says that he wanted to accept the offer, but couldn't because of Baptist's lien. Two years passed. The lien

eventually expired in June 2016; and Baptist released it sometime around March 2017. The statute of limitations ran, too. Later in 2017 — once he was sure the lien was no more — Whitley accepted the settlement offer. He never had to pay any hospital bills; Baptist sent some of Whitley's bills to QualChoice, who paid in part. The balance, according to Baptist, was written off.

Whitley brought this case against Baptist Health, Baptist Health Hospitals, Diamond Risk Insurance LLC,* and several insurance companies in state court. His remaining claims are for violation of the Arkansas Deceptive Trade Practices Act and several torts. Whitley says the lien-driven delay in accepting the settlement offer — which he measures at about two years — cost him more than $7,000 in lost interest. Baptist argues that Whitley did not raise a delay theory in his complaint. The Court disagrees. In paragraph 58 of the complaint, Whitley alleges that Baptist's lien "prevented the resolution of Plaintiff's tort recovery as the defendant driver's liability insurer, Progressive, will not disburse without a release of the lien." № 2 at 15. This is a CAFA case. № 41. In addition to his individual claims, Whitley wants to represent a class of Arkansawyers who had similar billing problems with Baptist. Baptist moves for summary judgment on all the claims. Continental Casualty Company, one of the other

---

* The Court will, for simplicity, refer to these three entities as "Baptist."

insurance company defendants, has adopted Baptist's motion and related papers. № 76 & № 77.

2. **Individual Standing.** This issue has been argued hard for some time and, at last, is ready for a decision. *E.g.*, № 63 & № 68. To defeat an Article III standing challenge at the summary judgment stage, Whitley must come forward with "affidavits or other evidence showing that [he] suffered an injury-in-fact[.]" *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417, 421 (8th Cir. 2011). He has.

The Court stands by its earlier conclusion—notwithstanding Baptist's repeated arguments to the contrary—that interference with a settlement through an improper lien creates an injury. № 68 at 1. Thus, the deep issue is whether Baptist's lien was improper. Whitley says yes, pointing to several terms in the 2012 provider agreement between QualChoice and Baptist. № 84 at QC000347-383. There are some exceptions and qualifiers that don't seem to apply. But the gist of the terms is clear: Baptist must bill QualChoice for its services to QualChoice insureds; it must send the bills within 180 days of providing the services; and it is prohibited "in every instance . . . from billing, . . . or having any recourse against . . . persons other than the Plan Administrator[.]" № 84 at QC000355-357. The "Plan Administrator" is "the entity contracted by a Health Plan Payor to perform certain operational functions on behalf of the health plan, e.g. enrollment, claims adjudication[,] and claims payment."

№ *84 at QC000351*. Here, as best the Court can tell, that's an entity within or hired by QualChoice. Whitley cites similar terms in QualChoice's 2013 Provider Manual. *№ 86-1 at QC000023 & 44*. Plus, there's a subrogation clause in the manual that expressly applies where, as here, a QualChoice insured like Whitley is hurt by a third party. *№ 86-1 at QC000027*. In those circumstances, according to the Provider Manual, Baptist should submit any claims to QualChoice. *Ibid.* Baptist asks the Court to disregard this new record material until it decides whether Whitley has standing. *№ 89 at 1*. This misses the point: the new record material resolves Whitley's standing. And this case isn't like *Robinett v. Shelby County Healthcare Corporation*, where state and federal Medicaid law applied in the absence of an agreement between the parties to the contrary. 895 F.3d 582 (8th Cir. 2018). All material things considered, Whitley has come forward with sufficient evidence that Baptist's lien was improper to establish standing to pursue his claims. *Constitution Party of South Dakota*, 639 F.3d at 421. Whether he will prevail on the merits of those claims is, of course, for a later day.

 **3.**   **Class Standing.** As the only named plaintiff, Whitley must be a member of the putative class he seeks to represent. *E.g., Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974). Under the proposed class definition, he isn't. Here's the definition:

> All Arkansas residents who, during any applicable statutory period(s), received any type of healthcare treatment from any entity located in Arkansas that is owned by, controlled

by, or managed by the Baptist Defendants, while being covered by valid commercial health insurance, **and whose medical bills resulting from that treatment were either not submitted to health insurance for payment or were submitted and thereafter Baptist Defendants refunded those payments to their health insurance carriers and Baptist Defendants obtained payment for those bills directly from the patient, from an auto insurer, and/or from the patient's third-party tort recovery** (hereinafter "Class Members" or "the Class").

№ 2 *at 16* (emphasis added). The parties read the bolded language differently. There's no need to resolve their disagreement, though. Even under Whitley's more generous reading, he falls outside the proposed class. Whitley says these words create two types of class members: (1) those whose bills weren't submitted to the insurance company; and (2) those whose bills were submitted to the insurance company, refunded by Baptist, and ultimately paid by the patient, a car insurer, or the patient's tort recovery. № *74 at 18.* Whitley acknowledges that he's not the second type; it's undisputed that the bills were paid by QualChoice, not him, a car insurer, or settlement funds. Whitley says he's the first type of class member because Baptist didn't send his bills to QualChoice by the 180-day deadline. But that reading doesn't work—the class definition says nothing about the timeliness of Baptist's billing. And Whitley concedes that Baptist eventually submitted some of his bills to QualChoice. № *74 at 3.*

Therefore, even reading the bolded language in Whitley's favor, he's not in the class as currently defined.

Should the Court grant summary judgment on the class claims? On this record, no. Baptist insists that, under *Oetting v. Norton*, 795 F.3d 886 (8th Cir. 2015), the class claims must be dismissed for lack of a suitable class representative. That case is different for two reasons. First, the Court of Appeals concluded that Oetting lacked Article III standing for his individual claim because he hadn't sufficiently alleged injury. 795 F.3d at 890. As the named plaintiff, Oetting's lack of individual standing excluded him from the class he sought to represent and precluded a finding of class standing. 795 F.3d at 890–91. Given this Court's earlier conclusion that Whitley has sufficiently alleged injury to support Article III standing, no such conclusion follows in this case. Second, despite having "ample notice that defendants were asserting lack of standing as a jurisdictional defense" on the class claims, Oetting didn't timely try to cure the class-standing issues. 795 F.3d at 892. That's not what happened here. Baptist made its point about class standing for the first time a few months ago in the latest summary judgment papers. *№ 71 at 3 n.1*. Plus, the Court stayed class discovery more than six months ago (at Baptist's request) and limited discovery to Whitley-related materials in order to address Whitley's individual standing. *№ 68 & № 70*. The problem, it seems to the Court, is simply imprecision in the working class definition's words. Whitley

acknowledges that his definition could be clearer and pledges to clean it up so that he's in the class when he eventually seeks certification. № 74 at 20. In the circumstances, fairness requires giving Whitley some time to sort out class standing.

* * *

Motion for summary judgment, № 71, denied without prejudice. More details about Whitley's delayed-payment claim would help focus the case, too. Amended complaint with a refined class definition, and clarified claims, due by 7 September 2018. The stay on class discovery is lifted. An Amended Scheduling Order will issue. The motion for a new schedule, № 92, is denied as moot.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

6 August 2018